# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**In Re:**

**Settlement Facility Dow Corning Trust,**

**Marlene Clark-James,**

        **Appellant.**

_____/

Case No. 07-CV-10191

Honorable Denise Page Hood

## MEMORANDUM OPINION AND ORDER

**I.    BACKGROUND**

Claimant Marlene Clark-James is a rupture claimant before the Settlement Facility–Dow Corning Trust ("SF-DCT") pursuant to the Amended Joint Plan of Reorganization ("Plan") in the Dow Corning Corporation ("Dow Corning") bankruptcy action. The documents submitted by Ms. Clark-James indicate that she may have received implants on February 2, 1979. (Clark-James Exs. To Complaint) The implants were removed on October 3, 1996. (*Id.*) Ms. Clark-James submitted a rupture claim to the SF-DCT which was preliminarily reviewed by the SF-DCT staff. (*Id.*) Ms. Clark-James has not submitted any documentation indicating that she has sought review of her rupture claim through the error correction and appeals processes. (SFA, Annex A, Art. VIII) She has also not shown that she elected a review under the Individual Review Process provided by the Plan.

On January 11, 2007, a document entitled, "Complaint," was filed with the Court by Ms. Clark-James. The Complaint alleges that: 1) the SF-DCT has failed to operate as a trusted agent in securing and upholding the integrity of the process by sharing claimant's confidential information with Dow Corning; 2) the SF-DCT continues to ignore the post-operative report of the explanting

physician along with his written statement explaining his findings to support her rupture claim; and, 3) the SF-DCT continues to operate with frivolous delays despite having available proof of rupture. (Complaint, ¶¶ 1-3) Ms. Clark-James seeks the following relief: punitive damages in the amount of $300,000; the removal of the SF-DCT chief administrative team; installation of a new administrative team to be comprised of professionals from the Claimants Advisory Committee, Plaintiffs Liaison Counsel and the Dow Corning Liaison Unit; release to all claimants of their entire file; for the SF-DCT to accept as proof of her rupture claim the medical documentation she has submitted, including the MRI taken before the surgery; that the Court assign a monitor to be present and review all claims; that the SF-DCT no longer refer to Ms. Clark-James' original pathology report since it has been established that it is flawed; and for the SF-DCT to accept as proof of her rupture claim the medical documentation submitted prior to surgery. (Complaint, Relief, ¶¶ 1-7)

On February 5, 2007, Dow Corning filed the instant Motion to Dismiss. A response was filed by Ms. Clark-James on March 5, 2007. Dow Corning filed a reply on March 19, 2007. On April 5, 2007, Ms. Clark-James filed a Request for Clerk's Entry of Default which was denied by the Clerk since a Motion to Dismiss had been filed. Rule 55(a) of the Rules of Civil Procedure provides that the Clerk shall enter a party's default only if the party "has failed to plead or otherwise defend" the action. Fed. R. Civ. P. 55(a). As noted by the Clerk, Dow Corning defended the action by filing a Motion to Dismiss.

Ms. Clark-James submitted an 80-page Amended Complaint dated November 19, 2007 (filed November 27, 2007). A review of the Amended Complaint reveals essentially the same arguments as the original Complaint, in addition to further arguments opposing Dow Corning's Motion to Dismiss. In the Amended Complaint, Ms. Clark-James seeks damages in the amount of

$400,000,000.00 and requests that this matter be forwarded to the United States Attorney General and the Board of Ethics for investigation of the SF-DCT and Dow Corning's violations of her privacy rights.

Ms. Clark-James, along with Dow Corning's counsel, appeared at the hearing and argued their respective positions to the Court.

## II. ANALYSIS

### A. Appeal of SF-DCT Decision

Based on a liberal reading of Ms. Clark-James documents, it appears that she seeks a review of the SF-DCT's determination that she has not submitted sufficient proof to show that her implants her ruptured. A letter from the SF-DCT dated April 6, 2006 indicates that the SF-DCT had preliminarily reviewed Ms. Clark-James' rupture claim for proof of rupture and concluded that the documentation provided does not describe rupture as defined by the Plan. (Complaint, April 6, 2006 letter exhibit) The SF-DCT noted that the pathology report described both implants as intact. (*Id.*)

Dow Corning argues that Ms. Clark-James has not exhausted the available review process provided under the Plan. Ms. Clark-James has not requested review under the error and correction process, nor sought review from the Claims Administrator, nor elected an Individual Review Process. (SFA, Annex A, Article VIII) Dow Corning claims that the settlement program in the Plan is intended to be an administrative process for claimants who elect to have their claims resolved under the settlement option. Dow Corning states that the Plan delegates decisions regarding allowance of settling claims to the Claims Administrator and the SF-DCT staff. (SFA, § 4.02(a)) A claimant who does not agree with the SF-DCT findings may seek reconsideration of the claim through an error correction and appeal process. (SFA, Annex A, Art. VIII) If dissatisfied with the

3

reconsideration decision, the claimant may seek review by the Claims Administrator and then appeal that decision to the Appeals Judge. (SFA, Annex A, § 8.02) The decision of the Appeals Judge is final and binding on the claimant. (SFA, Annex A, § 8.05) Even if Ms. Clark-James availed herself of the review process under the Plan, the Plan does not allow a right to appeal to this Court.

Section 8.7 Amended Plan of Reorganization states that this Court retains jurisdiction to resolve controversies and disputes regarding the interpretation and implementation of the Plan and the Plan Documents, including the SFA, and, to enter orders regarding the Plan and Plan Documents. (Plan, §§ 8.7.3, 8.7.4, 8.7.5) The Plan provides for the establishment of the SF-DCT, which is governed by the SFA. (Plan, § 1.131) The SF-DCT was established to resolve Settling Personal Injury Claims in accordance with the Plan. (Plan, § 2.01) The SFA and Annex A to the SFA establish the exclusive criteria by which such claims are evaluated, liquidated, allowed and paid. (SFA, § 5.01) Resolution of the claims are set forth under the SFA and corresponding claims resolution procedures in Annex A. (SFA, § 4.01)

The Plan establishes administrative claim review and appeals process for Settling Personal Injury claimants. As argued by Dow Corning, any claimant who does not agree with the decision of the SF-DCT may seek review of the claim through the error correction and appeal process. (SFA, Annex A, Art. 8) A claimant may thereafter obtain review by the Appeals Judge. (SFA, Annex A, Art. 8) The Plan provides that "[t]he decision of the Appeals Judge will be final and binding on the Claimant." (SFA, Annex A, § 8.05) Claimants who seek review under the Individual Review Process also have a right to appeal directly to the Appeals Judge. The Plan provides that "[t]he decision of the Appeals Judge is final and binding on both Reorganized Dow Corning and the claimant." (SFA, Annex A, § 6.02(vi))

4

The Plan provides no right to appeal to the Court and expressly sets forth that the decision of the Appeals Judge is final and binding on both the Reorganized Dow Corning and the claimants. Allowing the appeal to go forward and to direct the Claims Administrator to pay the rupture claim would be a modification of the Plan language. Generally, the provisions of a confirmed plan bind the debtor and any creditor. 11 U.S.C. § 1141(a). Section 1127(b) is the sole means for modification of a confirmed plan which provides that the proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of the plan. 11 U.S.C. § 1127(b).

"In interpreting a confirmed plan courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); 11 U.S.C. § 1141(a). "An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation." *City of Covington v. Covington Landing, Ltd. P'ship,* 71 F.3d 1221, 1227 (6th Cir. 1995). A court construing an order consistent with the parties' agreement does not exceed its power. *Id.* at 1228.

The Plan's language is clear and unambiguous that the decision of the Appeals Judge is final and binding on the claimants and the Reorganized Dow Corning. The Court has no authority to modify this language. Although bankruptcy courts have broad equitable powers that extend to approving plans of reorganization, these equitable powers are limited by the role of the bankruptcy court, which is to "guide the division of a pie that is too small to allow each creditor to get the slice for which he originally contracted." *In re Dow Corning,* 456 F.3d at 677-78 (quoting *In re Chicago,* 791 F.2d 524, 528 (7th Cir.1986)). "A bankruptcy court's exercise of its equitable powers is cabined by the provisions of the Bankruptcy Code." *Id.* at 678 (citing *In re Highland Superstores, Inc.,* 154

5

F.3d 573, 578-79 (6th Cir.1998)). Ms. Clark-James has not shown that the Court has the authority to exercise its equitable powers outside the clear and plain Plan language. The Court cannot consider Ms. Clark-James' request to review the SF-DCT's decision initially denying her claim since the Plan does not provide for an appeal to this Court to review the SF-DCT's decision.

The Plan is also clear as to the requirement to show rupture. Specifically, the Plan defines "Rupture" to mean "the failure of the elastomer envelope(s) surrounding a silicone-gel Breast Implant to contain the gel (resulting in contact of the gel with the body), not solely as a result of 'gel bleed', but due to a tear or other opening in the envelope after implantation and prior to the explantation procedure." (SFA, Annex A, § 6.02(e)(i)) To show proof of a rupture, a claimant who was explanted after January 1, 1992 and before the Effective Date of the Plan, "must submit a *contemporaneous* operative report and, if available, a pathology report together with a statement as to whether the ruptured implants have been preserved and, if so, the name and address of the custodian." (SFA, Annex A, § 6.02(e)(iii)b.)(italics added) Ms. Clark-James seeks an order from this Court for the SF-DCT to consider the medical reports, including the MRI taken before the explant surgery, as proof of rupture. However, the Plan clearly provides that a contemporaneous operative report and/or a pathology report must be submitted to show rupture. The Plan does not provide that medical reports prior to the explant surgery be considered as proof of rupture. The Court has no authority to modify the Plan, equitable or otherwise, to provide that a medical report prior to the explant surgery be considered as proof of rupture.

**B.** **Violation of Privacy Claims Against the SF-DCT and Dow Corning**

Since Ms. Clark-James has filed a Complaint without prepayment of fees, the Court will consider her Complaint under 28 U.S.C. § 1915(e). Pursuant to the provisions of 28 U.S.C. §

6

1915(e)(2)(B), a district court may dismiss a complaint before service on the defendant if it is satisfied that the action is frivolous, malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant or defendants who is/are immune from such relief. A complaint may be dismissed as frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). In *McGore v. Wrigglesworth,* the Sixth Circuit clarified the procedures a district court must follow when faced with a civil action filed by a non-prisoner proceeding *in forma pauperis*:

> Unlike prisoner cases, complaints by non-prisoners are not subject to the screening process required by § 1915A. However, the district court must still screen the complaint under § 1915(e)(2) ... Section 1915(e)(2) provides us with the ability to screen these, as well as prisoner cases that satisfy the requirements of this section. The screening must occur even before process is served or the individual has had an opportunity to amend the complaint. The complaint must be dismissed if it falls within the requirements of § 1915(e)(2) when filed.

*McGore v. Wrigglesworth,* 114 F.3d 601, 608 (6th Cir. 1997).

Federal courts hold the *pro se* complaint to a "less stringent standard" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972). The Court liberally construes Ms. Clark-James' claims in her Complaint. She generally argues that the SF-DCT and Dow Corning violated her privacy rights since the SF-DCT and Dow Corning shared her confidential information. Dow Corning argues that Ms. Clark-James has failed to allege that either SF-DCT or Dow Corning disclosed confidential information outside of the Plan mandated process for review by Dow Corning. Dow Corning also argues that Ms. Clark-James herself has provided Dow Corning with medical information.

The Plan provides that "Reorganized Dow Corning will also review, at the request of the

7

Claims Office and/or the Claims Assistance Program, Proof of Manufacturer submissions that do not meet the standard for acceptable proof." (SFA, Annex A, Schedule I, ¶ F, A-63) The Court finds that Ms. Clark-James has failed to state a claim upon which relief may be granted since Dow Corning and the SF-DCT are allowed to share such information under the Plan. Ms. Clark-James has not alleged that either Dow Corning or the SF-DCT shared the information outside of the Plan process. It is noted that by submitting her medical information to the Court as attachments to her Complaints or any other documents, Ms. Clark-James has made her medical information public.

As to the relief requested, specifically the removal of the chief administrative team of the SF-DCT, the Court is bound by the Plan. The Claims Administrator may be removed from office for cause by this Court. (SFA, § 4.02(a)-(i); SFA, § 4.02(d)(ii)) The Plan also provides for a Claims Office to review, process and resolve all settling personal injury claims. (SFA, § 4.03) The Plan further provides for Quality Control and Audit Procedures of the SF-DCT. (SFA, §§ 5.01-5.05) The Plan also provides that a claimant may have access to her or his own file under certain circumstances. (SFA, Annex A, § 7.01(d)) As noted above, the Court has no authority to modify the Plan on its own without approval of the parties. The remaining claims alleged by Ms. Clark-James must be dismissed.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Marlene Clark-James Motion [Complaint] to Review Settlement Facility Procedures (**Docket No. 1, filed January 11, 2007**) is DENIED.

IT IS FURTHER ORDERED that Dow Corning's Motion to Dismiss (**Docket No. 2, filed**

**February 24, 2007**) is GRANTED.

   IT IS FURTHER ORDERED that the Complaint and Amended Complaint are DISMISSED.


               */s/ Denise Page Hood*
                DENISE PAGE HOOD
                UNITED STATES DISTRICT JUDGE

Dated: March 31, 2008

---

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on this date, March 31, 2008, by electronic means and/or first class U.S. mail.

                S/Sakne Srour
                Deputy Clerk